## COMMONWEALTH *vs.* JULIO RUIZ.

No. 06-P-488.

Worcester. September 20, 2007. - April 17, 2008.

Present: BERRY, GREEN, & VUONO, JJ.

Further appellate review granted, 452 Mass. 1101 (2008).

*Practice, Criminal,* Revocation of probation.

A Superior Court judge properly revoked the criminal defendant's probation based on letters the defendant wrote to the victim while he was serving his prison term, in violation of a condition of his probation that he not contact the victim, where the no contact prohibition was of such immediate effect as to be active and binding over the defendant both during incarceration and continuing through the from and after probationary period [582-585], and there was no merit to the defendant's argument that revocation of his probation was not sustainable because the manner in which he violated a condition of probation did not constitute a criminal offense [585-586].

INDICTMENTS found and returned in the Superior Court Department on March 8, 2004.

A probation revocation hearing was held before *Kenneth J. Fishman,* J.

*John J. Barter* for the defendant.

*Patricia Flannery,* Assistant District Attorney, for the Commonwealth.

BERRY, J. Two probationary conditions in the order of the sentencing judge directed that the defendant was to have no contact with the victim, his former domestic partner. However, it is argued in this appeal that, because the three-year probation period was to flow from and after the defendant's five and one-half year term of imprisonment for his rape of the victim, revocation of probation because of a violation of the no contact probationary orders could not be predicated upon the defendant's acts while he was serving his prison term precedent to the ensuing probationary term. In essence, the argument advanced by the defendant is that because the probationary conditions would not be activated until

his release from prison, they were not of force and effect during his prison incarceration, and therefore could not be the legal basis for the revocation of probation.

We determine that the no contact conditions of probation, as set in the orders of the sentencing judge at disposition and signed by the defendant in the probation contract, were legally enforceable and structured in a manner to be binding and to impose active probationary restrictions on the defendant both during the term of imprisonment and during the from and after continuing probation following the defendant's release from prison. Accordingly, for the reasons stated herein, we affirm the order revoking the defendant's probation and imposing a sentence of one year to one year and one day from and after the sentence imposed on the rape conviction.

1. *Procedural and factual background.* On September 7, 2004, the defendant pleaded guilty in Superior Court to seven indictments charging attempted murder, rape, assault and battery by means of a dangerous weapon, assault and battery (two counts), larceny of a motor vehicle, and unarmed robbery. The offenses arose out of two separate life-threatening attacks upon the victim, Jane Doe,[1] a woman with whom the defendant had a longstanding relationship, and who was the mother of his daughter.

The defendant was sentenced to a five to five and one-half year prison term on the rape charge. The judge imposed three years' probation on the remaining six convictions, extending from and after the term of incarceration imposed on the rape conviction.

In connection with the probationary term, the sentencing judge imposed as orders of the court twelve standard conditions of probation and four special conditions of probation. The defendant at the time of sentencing signed a probation contract that incorporated these conditions of probation. At issue in this appeal are the following two probation conditions. The first is set forth in a section of the probation contract as general probationary condition number five. This probationary condition prohibited the defendant from having contact with the victim, and ordered as follows: "You shall not have any direct or indirect contact with the victim(s) nor reside in the same house or apartment with the

---

[1]A pseudonym. See G. L. c. 265, § 24C.

victim(s) unless approved by the court." The second no contact order imposed by the sentencing judge, which is set forth in a special condition of probation, reinforced the general no contact probation condition with particularization, specifically identifying the victim and ordering that the defendant have "no contact w[ith] victim — [Jane Doe]."[2]

In addition to the aforesaid probation no contact conditions, also relevant to the issues presented in this appeal is an abuse prevention order that had issued under G. L. c. 209A against the defendant. More specifically, prior to the charges that ended in the defendant's criminal convictions, the victim had applied for, and a judge had issued, a G. L. c. 209A abuse protection order, which included a no contact restriction. This c. 209A order was in effect at the time of the defendant's guilty pleas and sentencing, and at the time that the defendant began serving his prison term. However, the c. 209A order was scheduled to expire in March, 2005, a point in time at which the defendant remained in prison on the rape conviction. The victim did not seek an extension of the c. 209A order because "she thought she was protected by the fact that the defendant was incarcerated."

Sometime after the March, 2005, expiration of the G. L. c. 209A abuse protection order, and while the defendant was still in prison, the defendant sent four letters to the victim. In one of the letters, set forth in the margin,[3] in ominous undertones, the defendant wrote a diatribe about his belief and anger

---

[2]The special probation conditions included that the defendant participate in a batterers' counselling program, participate in a sex offender evaluation and counselling, register as a sex offender, and participate in an anger management program.

[3]This letter the defendant sent to the victim, in pertinent part, reads as follows:

> "I hope that when you get this letter Julie [our daughter] will be in the best of health and doing good in every way. Well I want to make this as quick as possible all this shit that's going on is no fucking game [that I can swear for my children], and is not about you get that *straight* is about Julie you took her away from me I can't talk to her I can't see her and that shit hurts more than you think, I know I was acting stupid and a lit[tle] out of line but all you had to do was talk to me . . . . You want me to sit here and act like everything is cool went is not, *Hell no!* that will never happen as long as I have other choices out there, I will do anything to make sure Julie is good, trust me, all I want is to see Julie and talk to her and I promise you that you don't have to worry about nothing, I will not get into your personal live or ask you any

that the victim was interfering with his relationship with their daughter. This particular letter, as well as the other letters, frightened the victim, and she contacted the Superior Court probation department.[4] Deeming the letters sent by the defendant to the victim to be in violation of the probationary terms, a probation office issued, and the defendant received, a probation revocation notice that charged as a violation of probation the defendant's "failure to comply with no contact order imposed by the Court."

Prior to the probation revocation hearing in Superior Court, the defendant filed a motion to dismiss the revocation proceeding on the ground that there could be no probation violation because the probationary term had not yet begun. This motion was denied.

At the probation revocation hearing, the following facts were the subject of stipulation: (1) the defendant admitted that he wrote and sent to the victim the four letters submitted as exhibit one at the probation revocation hearing; (2) the victim was placed in fear when she received these letters; and (3) the defendant sent the letters after the original G. L. c. 209A abuse prevention order expired in March, 2005.

Following the probation revocation hearing, a judge, who was not the sentencing judge, found that the defendant had violated the terms of his probation, and revoked probation on one of the indictments. The judge found that one of the letters to the victim, see note 3, *supra*, had "a not so subtle threatening tone to it . . . [a]nd . . . that some additional period of incarceration is necessary to make sure that the defendant understands that whether it's while he's incarcerated, or after his term of imprisonment has ended and he's on probation, that there are very serious

question about what you did or anything like that because I don't give a fuck about what you are doing. . . . Julie needs you in her [life] but she needs me to she needs to see me and she needs to touch me and keeping her away from me is not gonna work trust me [you know very well not to gamble with a father's feelings] . . . . [I repeat again that this is not for you is for Julie much better women I've lost and I am still alive and go forward], this here ain't shit for me I can do it again if I have to. I'm coming, out *soon*."

[4]After speaking with a probation officer, the victim applied for, and was issued, a new abuse prevention order under G. L. c. 209A, on May 31, 2005.

consequences that can befall him if he decides to have further contact in violation of these terms of probation." The judge sentenced the defendant to one year to one year and one day in State prison to be served from and after the five and one-half year term of imprisonment previously imposed on the rape conviction.

2. *The enforceability of the no contact general and special probationary conditions during incarceration.* As previously alluded to, the core of the defendant's challenge to his probation revocation is that the no contact probationary conditions were not in effect during the five and one-half years in which he was incarcerated, and within which time he sent the letters. Rather, it is submitted by the defendant that because probation was imposed to run from and after his imprisonment years, the no contact orders only ran from that postincarceration point forward. We reject this proposition. That certain conditions activate upon the defendant's release to probation after a prison term does not mean that, upon the sentencing orders being imposed, certain other probationary conditions are not immediately activated and in effect during a prison sentence as well as in the subsequent, postprison probationary term.

"There is nothing in either G. L. c. 279, § 1[5] or § 3[6], which precludes a judge from revoking a probationary term for a violation of its conditions after its imposition but prior to its commencement." *Commonwealth* v. *Phillips*, 40 Mass. App. Ct.

---

[5]General Laws c. 279, § 1, as amended through St. 1975, c. 347, provides, in pertinent part, as follows:

> "When a person convicted before a court is sentenced to imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended and that he be placed on probation for such time and on such terms and conditions as it shall fix."

[6]General Laws c. 279, § 3, as amended by St. 1972, c. 251, provides, in pertinent part, as follows:

> "At any time before final disposition of the case of a person placed under probation supervision or in the custody or care of a probation officer, the probation officer may arrest him without a warrant and take him before the court, or the court may issue a warrant for his arrest. When taken before the court, . . . if he has been sentenced, it may continue or revoke the suspension of the execution of his sentence . . . ."

801, 803 (1996) (footnote omitted). "[A] defendant may be subject to a probation revocation based upon criminal conduct occurring after the imposition of the sentence to probation but before the commencement of the probationary period." *Id.* at 805.

A judge's probation orders are not only docketed in the court's sentencing records, but also are memorialized in a form often referred to as a probation contract, which the defendant is required to sign, accepting and acknowledging the sentencing judge's imposition of general and special conditions of probation. See *Commonwealth* v. *MacDonald*, 50 Mass. App. Ct. 220, 223-224 (2000), *S.C.*, 435 Mass. 1005 (2001). That probation conditions may have immediate force and effect, notwithstanding an intervening incarceration, is reflected in the standard probation contract utilized in the Superior Court, which the defendant signed in this case, and which speaks in the present tense as follows: "If you fail to comply with any of the following conditions of probation *now* placed on you by this court, you may be ordered to appear again in court, after due notice, and the court may change the conditions, extend the period of probation or impose sentence" (emphasis added). As an order of the court, the probationary conditions imposed by the sentencing judge are immediately binding and enforceable. "The terms of a defendant's probation as set by the judge are enforceable as an order of the court." *Id.* at 224. See G. L. c. 279, § 1.

The defendant's contention that the no contact probationary conditions were not in effect during his prison term, but only became legally enforceable in the postincarceration probationary years, is not correct. The conditions of probation as set by the sentencing judge at disposition, and signed by the defendant in the probation contract, were in their entirety legally enforceable ex proprio vigore. Such immediate legal enforceability of probation conditions is evident when one considers a sentence to straight probation, wherein all of the conditions of probation activate and place immediate probationary obligations on a defendant.[7] The same legal enforceability of the probationary conditions exists where a defendant's sentence includes a period of incar-

---

[7]This is, of course, unless the sentencing judge sets a different effective date for a particular probation condition.

ceration, followed by a from and after probationary period. In the case of an incarcerated defendant, the probation conditions — all of which are embedded in the legally enforceable sentencing order of the court imposed on the date of disposition — are structured in such a manner as to span dual time frames: the first time frame being the defendant's incarceration, and the second time frame being the defendant's postimprisonment release to probation.

In the first and immediate time frame, certain probationary conditions — see, e.g., as imposed in this case, general probation condition number one, ordering that the defendant "must obey local, state and federal laws," and condition number eleven, ordering that the defendant "shall not receive, possess, control or transport any non-prescription drugs, weapon, explosive firearm, or ammunition" — forthwith activate, and apply both during the defendant's prison term and during the from and after continuing probation. In contrast, certain other probationary conditions — albeit incorporated in, and fully legally enforceable by the original probation order imposed by the judge and signed by the defendant — cannot practically or logically yield current compliance by the imprisoned defendant, and rather are executory and geared to activate in the second time frame, that is, become active in imposing probationary compliance obligations on a defendant after the defendant's release from prison to probation, and serve to ensure the court's and the probation department's continuing oversight of the defendant upon discharge from incarceration. For example, there are general probation conditions that provide that a probation officer may visit the defendant at home, school, and work place.

The question posed in this appeal, then, may be analyzed in terms of whether the no contact probation condition imposed by the sentencing judge fell within the first time frame and, accordingly, was forthwith activated as of the defendant's sentencing. We conclude that the no contact prohibition was of such immediate effect, so as to be active and binding over the defendant both during incarceration and continuing through the from and after probationary period.

The immediate activation of the no contact general condition of probation number five, stating that the defendant "shall not

have any direct or indirect contact with the victim[],"[8] was reenforced by the sentencing judge imposing an "extra," special probationary condition, which speaks in the present tense and orders "no contact w[ith] victim — [Jane Doe]." "[I]t is the function of the sentencing judge to set the conditions of probation." *A.L.* v. *Commonwealth,* 402 Mass. 234, 242 (1988). Contrary to the defendant's contentions, giving immediate effect to the no contact probationary conditions is necessary to achieve the purpose of the conditions themselves as imposed by the sentencing judge — to protect the victim from the defendant's harassing contact. The central purpose of the no contact prohibition is defeated unless given effect commencing with the point of imposition. The defendant's hypertechnical argument[9] defeats that essential purpose. The no contact prohibition in the general and special probationary conditions imposed by the sentencing judge was not somehow warehoused during the defendant's imprisonment, but rather was then in effect, thereby encapsulating the period within which the defendant sent the subject letters to the victim.[10] Hence, the defendant's sending of the letters properly was the predicate for revocation of the defendant's probation, as the judge did.

3. *Probation violation need not be criminal offenses.* The defendant also argues that his probation revocation cannot be sustained, because even if he violated the probationary no contact conditions, the violation was not a criminal act and probation

[8]Indeed, the no contact general probationary condition number five reflects the dual time addressed above. This probation condition bars contact immediately in the first time frame spanning the imprisonment, and also imposes future limitations on contact that activate on the defendant's release from imprisonment and prohibit the defendant from "resid[ing] in the same house or apartment with the victim[ ] unless approved by the court."

[9]The argument posits that because not all conditions can be meaningfully applied during incarceration, then none can be so applied. But, even where a condition cannot be meaningfully applied during incarceration, the limitation need only apply to that particular condition (or conditions), not to the universe of conditions as a whole.

[10]The defendant cites *Commonwealth* v. *Aquino,* 445 Mass. 446 (2005), and *Commonwealth* v. *Arroyo,* 70 Mass. App. Ct. 228, further appellate review granted, 450 Mass. 1104 (2007). Both cases are distinguishable. At issue in both cases was the question whether the defendant was "penalized through probation revocation proceedings for offenses occurring after probation ha[d] ended." *Commonwealth* v. *Aquino, supra* at 448.

cannot, he submits, be revoked absent such a criminal element.[11] Contrary to the defendant's insistence, "[a]ny conduct by a person on probation which constitutes a violation of any of the conditions of his probation may form the basis for the revocation of that probation. Such conduct may involve the violation of criminal laws, but there is no prerequisite that the probationer be convicted thereof to permit the violation to be used as the basis for the revocation." *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976). Thus, the issue is not whether the defendant's conduct in violating the no contact probationary conditions resulted in criminal prosecution and conviction; the issue is whether a condition of probation has been violated. "There are two components to the decision to revoke probation: a retrospective factual question whether the probationer has violated a condition of probation and a discretionary determination by the judge whether violation of a condition warrants revocation of probation." *Commonwealth* v. *Faulkner*, 418 Mass. 352, 365 n.11 (1994).

In this case, the stipulated evidence proved violations of the no contact probation conditions and proved, thereby, one or more violations of the conditions of probation by a preponderance of the evidence. See *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995). That being so proved, in the discretionary review of whether revocation was warranted, the judge surely could weigh the defendant's wilful acts of sending letters to the victim, the threatening tone and ominous tenor of the letters, and the precedent acts of violence by the defendant upon the victim.[12]

*Order revoking probation and imposing sentence affirmed.*

[11]A violation of a G. L. c. 209A abuse prevention order may be prosecuted as a criminal offense. See G. L. c. 209A, § 7. However, in this case there was not a predicate for such a criminal case because the original c. 209A order that had issued to the victim, as previously described, had expired at the time the defendant wrote the subject letters.

[12]The defendant's assertion that the revocation of his probation deprived him of due process rights because he was not on notice that writing letters to the victim, including during his incarceration, was contrary to the no contact probationary conditions is without merit. Notice that the conditions were "now placed" on the defendant at the time of sentencing was provided in the probation contract that the defendant signed. Furthermore, at his plea hearing the defendant told the sentencing judge he understood the terms of his probation.