Commonwealth *vs.* Julio Ruiz.

Worcester. December 4, 2008. - March 31, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Practice, Criminal,* Revocation of probation. *Due Process of Law,* Probation revocation, Notice.

At a probation surrender hearing in Superior Court involving a criminal defendant who had been sentenced, following guilty pleas, to a term of incarceration on one offense and a term of probation (to run "from and after" the incarcerated sentence) on six other offenses, the judge erred in revoking the defendant's probation based on the defendant's noncriminal acts that were proscribed by the terms of probation (i.e., contact with the victim) and were committed while the defendant was still incarcerated, where the defendant did not receive adequate notice that the condition of probation prohibiting contact with the victim was in effect during the period of his incarceration. [477-484]

Indictments found and returned in the Superior Court Department on March 8, 2004.

A probation revocation hearing was held before *Kenneth J. Fishman, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John J. Barter* for the defendant.

*Patricia Flannery,* Assistant District Attorney, for the Commonwealth.

*Sharon N. Chaitin-Pollak,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

Marshall, C.J. The defendant was sentenced, on seven separate offenses, after his guilty pleas were accepted. One sentence imposed a term of incarceration; the other six imposed a term of probation, to run "from and after" the incarcerated sentence. At issue in this appeal is whether a defendant's probation may be revoked based on noncriminal acts proscribed by the terms

of probation (in this case, contact with the victim) for another offense where the noncriminal act occurred while the defendant was still incarcerated for the first offense. The Appeals Court concluded that a judge may revoke a "from and after" probationary term based on a violation of its conditions prior to the commencement of the term of probation and affirmed the decision of a judge in the Superior Court who had done so in this case. *Commonwealth* v. *Ruiz*, 71 Mass. App. Ct. 578, 579, 582-585 (2008). On the defendant's application for further appellate review, we conclude that, while a judge may have that authority, in this case the defendant did not receive adequate notice that the condition of probation prohibiting contact with the victim was in effect during the period of his incarceration. We reverse the decision of the Superior Court judge.

1. *Background.* The material facts are not in dispute. The defendant attacked, on two separate occasions, a woman with whom he had been in a relationship and who was the mother of his daughter. On March 8, 2004, a grand jury returned seven indictments charging the defendant in connection with his attacks.[1] The defendant pleaded guilty on September 7, 2004. The judge, accepting the disposition agreed to by both parties,[2] sentenced the defendant to a term of from five to five and one-half years in State prison on the indictment charging rape and to a three-year term of probation on the six other indictments "from and after" the sentence for rape. Because the circumstances surrounding the wording and the issuing of the probationary sentence are significant, we describe them in some detail.

At the plea hearing, the defendant's term of probation was orally described, three separate times, as commencing "from and after" or "on and after" his term of incarceration. Thus, in explaining the agreed-on disposition to the judge, the assistant district attorney stated that she was recommending "a three year

[1]The indictments charged unarmed robbery, G. L. c. 265, § 19 (*b*); larceny of a motor vehicle, G. L. c. 266, § 28 (*a*); aggravated rape, G. L. c. 265, § 22 (*a*); assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (*b*); attempted murder, G. L. c. 265, § 16; and two indictments charging assault and battery, G. L. c. 265, § 13A (*a*).

[2]The Commonwealth amended the charge from aggravated rape, G. L. c. 265, § 22 (*a*), to rape, G. L. c. 265, § 22 (*b*). The defendant pleaded guilty to the amended indictment of rape and to each of the other six indictments.

probation . . . to be served from and after his incarceration."
During the plea colloquy, the judge asked the defendant whether
he understood "that if the Court accepts the agreed recommen-
dation, that if you are placed on probation *on and after* the
sentence that would be imposed, that if you do violate those
terms and conditions of probation that you can be brought in
for a violation of probation" (emphasis added). The defendant re-
sponded affirmatively. Finally, the clerk, in announcing the sen-
tence, described it as "a period of three years probation to com-
mence from and after" the sentence on the rape conviction. The
clerk then recited certain of the conditions of probation, which
included "no contact with the victim," and asked the defendant
whether he recognized the probation officer, who was present in
the court, with whom he should be in contact, "[d]uring the three
year period" of probation.

The defendant signed a probation agreement form that in-
cluded preprinted and handwritten terms.[3] The form states,
"You have been placed on probation for the period *3 yrs from
& after*," the italicized words having been written by hand. In
preprinted language, the form also states, "If you fail to comply
with any of the following conditions of probation now placed on
you by this court, you may be ordered to appear again in court,
after due notice, and the court may change the conditions, extend
the period of probation or impose sentence." Under a heading
"Conditions of Probation," the form sets forth twelve preprinted
conditions, most notably, "You shall not have any direct or indirect
contact with the victim(s) nor reside in the same house or apart-
ment with the victim(s) unless approved by the court." The form
includes several handwritten "special conditions of probation,"
including "no contact [with] victim," and "[r]eport to probation
immediately upon release."

In the spring of 2005, the defendant, while incarcerated,
wrote letters to the victim. The victim brought the letters to the
attention of the Superior Court probation department, and on
May 18, 2005, the probation department issued a notice of pro-
bation surrender for "failure to comply with the no contact
order imposed by the Court." The defendant moved to dismiss

---

[3]The form is titled "Commonwealth of Massachusetts Superior Court Proba-
tion Contract."

on grounds that his conduct was not criminal, that the sentencing judge did not intend the condition of probation prohibiting contact with the victim to take effect until his probationary term commenced, and that "it offends due process to revoke probation that, at the time of the conduct at issue, the defendant does not know or have reason to know is in effect." After a hearing, a judge in the Superior Court, who was not the sentencing judge, denied the defendant's motion, and a probation surrender hearing commenced on September 16, 2005.

At the probation surrender hearing, the Commonwealth and the defendant stipulated to the following: the defendant admitted he was the author of the letters received by the victim. Although the victim had obtained a protective order against the defendant that was in effect at the time he was sentenced, see G. L. c. 209A, the order had lapsed in March, 2005, and the victim had not sought to renew it at that time. After the victim received the letters from the defendant, she obtained, on May 31, 2005, another protective order against the defendant, who remained incarcerated. Thus, at the time that the defendant wrote the letters to the victim, no protective order was in effect prohibiting him from contacting her.

The judge found that the defendant had violated the terms of his probation. Having earlier reviewed the letters later introduced in evidence,[4] the judge also found that one of the letters addressed to the victim had a "not so subtle threatening tone to it." He sentenced the defendant to a term of incarceration of from one year to one year and a day, revoking the defendant's probation on the defendant's conviction of assault and battery with a dangerous weapon. The defendant's appeal followed.[5]

2. *Discussion.* The defendant does not suggest that the specific conditions of his probation, including that he refrain from contact with the victim, were ambiguous in any respect, or that he did not understand that contact with the victim could result in a

---

[4]Four letters were entered in evidence. The record contains copies of five letters. Of those five letters, two were addressed to the victim, two were addressed to the daughter of the victim and defendant, and the other was addressed to a third individual.

[5]On November 25, 2008, the sentencing judge entered an order staying the defendant's sentence at issue in this case pending appeal.

revocation of his probation with the attendant consequences. His claim is more focused, specifically that he was not given fair warning or clear notice that his probation or any condition of his probation, including the condition that prohibited him from contacting the victim, were in effect while he was incarcerated, at a time when no protective order was in effect. For this reason, he argues, revocation of his probation, which the Commonwealth acknowledges is based solely on the defendant's contacting the victim in writing, violated his rights to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and arts. 10, 12, and 24 of the Massachusetts Declaration of Rights.[6]

Because it is dispositive of the case, we first address the due process claim. The principles of due process apply to probation revocation proceedings. See *McHoul* v. *Commonwealth*, 365 Mass. 465, 469 (1974), citing *Gagnon* v. *Scarpelli*, 411 U.S. 778, 781-782 (1973); *United States* v. *Gallo*, 20 F.3d 7, 11 (1st Cir. 1994). Among other things, due process "requires that a person be given a 'reasonable opportunity to know what the order prohibited, so that he might act accordingly.' " *Commonwealth* v. *Delaney*, 425 Mass. 587, 592 (1997), cert. denied, 522 U.S. 1058 (1998), quoting *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996). Thus, a statute may not be enforced "when individuals of normal intelligence must guess at the statute's meaning and may differ as to its application, thus denying them fair notice of the proscribed conduct." *Commonwealth* v. *Disler*, 451 Mass. 216, 223 (2008), citing *Commonwealth* v. *Freiberg*, 405 Mass. 282, 288-289, cert. denied, 493 U.S. 940 (1989), and cases cited. The "constitutional rule against vague laws applies as equally to probation conditions as it does to legislative enactments." *Commonwealth* v. *Power*, 420 Mass. 410, 421 (1995), cert. denied, 516 U.S. 1042 (1996).

---

[6]The defendant also argues that (1) a person may not be lawfully imprisoned for a "probation violation" based on noncriminal conduct taking place outside the court-ordered term of probation supervision; (2) a probation surrender must be based on an actual order of the court rather than speculation about the "purpose" of that order; (3) the Appeals Court overstepped its role in creating an unprecedented two-phase system of probation supervision; and (4) *Commonwealth* v. *Phillips*, 40 Mass. App. Ct. 801 (1996), was wrongly decided. Because of our disposition of the defendant's due process claim, discussed in the text, we need not address his remaining arguments.

Due process therefore requires that a defendant sentenced to probation receive fair warning of conduct that may result in the revocation of probation. See *Commonwealth* v. *Kendrick,* 446 Mass. 72, 75 (2006); *United States* v. *Gallo, supra.* In other words, a condition of probation must provide "reasonable guidance" as to the conduct prohibited so that people of "common intelligence" will understand its meaning. *Commonwealth* v. *Kendrick, supra,* quoting *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977). See *United States* v. *Cabot,* 325 F.3d 384, 385 (2d Cir. 2003), citing *Grayned* v. *Rockford,* 408 U.S. 104, 108 (1972) (probation condition must give person of ordinary intelligence reasonable opportunity to know what is prohibited); 6 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 26.9(b), at 863 (3d ed. 2007), quoting *Brown* v. *State,* 406 So. 2d 1262 (Fla. Dist. Ct. App. 1981) ("a probation condition does not afford fair notice as required by due process unless 'the average person would understand the meaning of the admonition' "); 16C C.J.S. Constitutional Law § 1669 (2005) ("In general, in order to comport with the requirements of due process, a condition of probation must be sufficiently precise and unambiguous to inform the probationer of the conduct that is essential so that he or she may retain his or her liberty"). In addition to unambiguous guidance about the conduct prohibited, probationers are entitled to clear guidance as to "*when* their actions or omissions will constitute a violation of their probation" (emphasis added). *Commonwealth* v. *Lally,* 55 Mass. App. Ct. 601, 603 (2002).[7] A judge's inquiry whether a defendant has received the required "fair notice" is not "confined to the four corners of the probation order";

---

[7]Courts have deemed notice to be of particular importance where, as here, the conduct prohibited by a condition of probation is noncriminal: while probationers are "generally held to be obligated to obey the criminal law, even when this condition is not expressly stated," 1 N.P. Cohen, Probation and Parole § 7:18, at 7-34 (2d ed. 1999), where "deprivation of the defendant's conditional liberty . . . rests upon the commission of a non-criminal act, the defendant must be given some form of warning to ensure that he or she understands, in plain and certain terms, the conditions of his or her sentence." 16C C.J.S. Constitutional Law § 1669, at 608 (2005), citing *State* v. *Budgett,* 146 N.H. 135 (2001). See *United States* v. *Gallo,* 20 F.3d 7, 12 (1st Cir. 1994) ("When, as now, a court order is read to proscribe conduct that is not in itself unlawful, the dictates of due process forbid the forfeiture of an actor's liberty by reason of such conduct unless he is given fair warning").

rather, the order's meaning may be illuminated by the judge's statements and other events that are part of the notification process. *United States* v. *Gallo, supra* at 12, 13.

Where a defendant is sentenced to both incarceration and probation, probation typically begins on the defendant's release from incarceration. *Commonwealth* v. *Juzba,* 44 Mass. App. Ct. 457, 459 (1998). See *id.* at 461 ("it is a strain to imagine that the defendant was intended to be on probation while he was imprisoned, and the defendant was made aware of his true situation when he signed a 'probation conditions' sheet to 'Report upon release to this office' "). While a judge "is not barred from placing a defendant on probation during the period of his incarceration," there must be evidence that the judge in fact did so. *Id.* at 459. See *Commonwealth* v. *Sheridan,* 51 Mass. App. Ct. 74, 77 (2001) (rejecting contention that defendant's probationary term commenced while he was committed at civil treatment center in part because "goals of probation . . . are only brought into play when the offender is released into the community"). Thus the terms of probation may state explicitly — as they did not do so here — that probation and some or all of its attendant conditions are to commence during the period of incarceration.[8]

Here, certain of the conditions of the defendant's probation, by their express terms, could not apply during his incarceration. For example, the conditions mandated that the defendant report to the probation department "immediately upon release," that he not "reside in the same house or apartment with the victim(s) unless approved by the court," and that he "work, seek employment or participate in education programs/training to the satisfaction" of his probation officer. Where not all of the conditions of his probation could apply during his term of incarceration, the question is whether the defendant was on notice that *any* conditions of his probation — that he not contact the victim, for example — were in effect during his incarceration. The record is devoid of any evidence to that effect. If anything, the record confirms that he

[8]In *Commonwealth* v. *Juzba,* 44 Mass. App. Ct. 457, 459 n.3 (1998), the court noted that placing a defendant on probation during the period of incarceration "is uncommon and is typically reserved for cases where it can be foreseen that the person will cause trouble while jailed, e.g., as a member of a prison gang."

was informed of the contrary, being told repeatedly, orally and in writing, that his probation was to commence "from and after" or "on and after" the completion of the sentence on the rape charge.[9]

The probation form signed by the defendant states "no contact with victim." This use of the "present tense," the Commonwealth argues, indicates that the condition "took immediate effect upon imposition of [the] sentences." If that were the only probationary condition imposed and the only notice given to the defendant, the point might have some merit. Where the defendant was repeatedly and expressly told that probation was to take effect "after" he had served his sentence of incarceration, the claim lacks merit. In addition, it is not clear that the phrase is in fact in the "present tense"; the tense is dependent on the context and surrounding language. An isolated, arguable use of the present tense describing one of many conditions of probation is hardly the "clear" guidance required to put the defendant on notice that a particular condition of probation is to take effect immediately. See *Commonwealth* v. *Lally, supra.* The use of any "present tense" at most obfuscates what was otherwise made clear at the plea hearing, that the term of probation and its attendant conditions were to begin after incarceration. To the extent there is any ambiguity, and we discern none, we construe the lack of clarity in the defendant's favor.[10] See *Commonwealth* v. *Power,* 420 Mass. 410, 421 (1995); *Commonwealth* v. *Lally, supra* ("As in criminal statutes, ambiguities in probation conditions are construed in favor of the defendant"). Cf. *State* v. *DeAngelis,* 257 S.C. 44, 49-50 (1971) (court could not revoke probation where sentencing order was ambiguous whether defendant was "in a probationary status" at

---

[9]The docket lists the defendant's sentences for probation as "on and after" his incarcerated sentence. Likewise, the "Clerk's Log" for each of the indictments to which the defendant received a sentence of probation indicates that the probation is "on & aft" the defendant's incarceration.

[10]The parties suggest different views of what the sentencing judge intended. Because we conclude that the defendant did not receive adequate notice that he was prohibited from contacting the victim while incarcerated, we need not address the issue. The question here is adequacy of notice to the defendant, not discernment of a judge's intention. In any event, had the judge intended one or more of the probationary conditions to become effective immediately, and during the defendant's term of incarceration, he could have made that explicit. See, e.g., *Commonwealth* v. *Juzba, supra* at 459 & n.3.

time offenses were committed; "[a]mbiguity or doubts relative to a sentence should be resolved in favor of the accused").[11]

The Commonwealth's argument that the *revocation* of the defendant's probation complied with due process misses the point: the defendant does not challenge the adequacy of the due process afforded in connection with the revocation hearing. In addition, while we agree with the Commonwealth that the record indicates that the defendant was informed of the consequences of violating the conditions of probation, the record is devoid of evidence to support the Commonwealth's contention that the defendant "knew that the judge did not want him to have contact with the victim" while he was incarcerated.

The Commonwealth argues that, as a matter of sound public policy, the Commonwealth should make a "reasonable effort" to ensure that a perpetrator of a crime not be permitted to threaten or harass a victim, whether the perpetrator is incarcerated or on probation in the community. We agree. Our decision today does not foreclose the Commonwealth from doing so. As the Commonwealth has acknowledged, the Commonwealth may act to prevent an incarcerated criminal from contacting his victim. For example, the Commonwealth may request, and a judge may order, a sentence of probation to run concurrently with the defendant's term of incarceration. See *Commonwealth* v. *Juzba*, 44 Mass. App. Ct. 457, 459 (1998).[12] A defendant must, however,

---

[11]As to the defendant's understanding of the terms and conditions of probation, he claims, and the Commonwealth does not contend otherwise, that he did not contact the victim at any time after he was sentenced in this case when any protective order against him was in effect, nor did he contact the victim after he was informed that doing so was considered a violation of the terms of his probation order. This suggests that the defendant did not intend to violate any term of his probation order. Cf. *Commonwealth* v. *Kendrick*, 446 Mass. 72, 76-77 & n.7 (2006) (although question is what "reasonable person" would understand condition of probation to mean, court's conclusion that "no contact" condition of probation was "reasonably understood" to prohibit conduct in which probationer engaged was buttressed by "evidence that the defendant himself understood the condition").

[12]A judge may also modify the terms of probation, while a defendant is incarcerated or after his release, should the need arise. See *Buckley* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 815, 817-819 (1985), quoting *Burns* v. *United States*, 287 U.S. 216, 221 (1932) (courts possess authority to modify probationary conditions "to serve 'the ends of justice and the best interests of both the public and the defendant' "; rejecting argument that "the addition of

have clear notice if any terms of probation are to be in effect while he is incarcerated. See note 10, *supra.*

The Commonwealth relies on *Commonwealth* v. *Phillips*, 40 Mass. App. Ct. 801, 803 (1996), for the proposition that "there is nothing in either G. L. c. 279, § 1 or § 3,[13] which precludes a judge from revoking a probationary term for a violation of its conditions after its imposition, but prior to its commencement." The authority of a judge to revoke probation is not the issue here.[14] The issue is whether this particular defendant had fair notice that one condition of his probation — prohibiting contact with the victim — was in effect during his term of incarceration. The Commonwealth's citations to cases from other jurisdictions are inapposite. Most do not concern a due process claim for failure to provide clear notice to a defendant. See, e.g., *State* v. *Kierstead*, 141 N.H. 803 (1997). In the few cases on which the Commonwealth relies where the issue of notice did arise, the conduct prompting the revocation of probation was conduct that violated the criminal laws. See, e.g., *Brown* v. *Commonwealth*, 564 S.W.2d 21, 23 (Ky. Ct. App. 1977) ("appellant was on notice that the commission of an additional crime was in viola-

reasonable conditions to an individual's probation" constitutes "a revision or revocation of a sentence" pursuant to Mass. R. Crim. P. 29, 378 Mass. 899 [1979], which provides temporal limits on modification of sentence).

[13]General Laws c. 279, § 1, provides in relevant part: "When a person convicted before a court is sentenced to imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended and that he be placed on probation for such time and on such terms and conditions as it shall fix."

General Laws c. 279, § 3, provides in relevant part: "At any time before final disposition of the case of a person placed under probation supervision or in the custody or care of a probation officer, the probation officer may arrest him without a warrant and take him before the court, or the court may issue a warrant for his arrest. When taken before the court . . . if he has been sentenced, it may continue or revoke the suspension of the execution of his sentence . . . ."

[14]The defendant argues that "[o]nly conduct occurring during the term of the probation may be considered by a trial court when determining whether there has been a probation violation," relying on *Commonwealth* v. *Arroyo*, 451 Mass. 1010, 1011 (2008), quoting *Commonwealth* v. *Aquino*, 445 Mass. 446, 449 (2005) ("the judge 'may not penalize the defendant for violations committed beyond' the probationary period"). Both of these cases addressed whether, in determining whether to revoke probation and what sentence to impose if probation was revoked, a judge could consider conduct occurring *after* the probationary term had expired. The cases are inapposite.

tion of the conditions of probation"). A defendant, like all members of society, is on notice that he may not violate the criminal law at any time. Thus, no additional or special notice is required. In contrast, where a condition of probation proscribes conduct that is not itself unlawful, "the dictates of due process forbid the forfeiture of an actor's liberty by reason of such conduct unless he is given fair warning." *United States* v. *Gallo*, 20 F.3d 7, 12 (1st Cir. 1994). See note 7, *supra.*

3. *Conclusion.* For all these reasons, we conclude that the defendant did not receive clear notice that the condition of probation prohibiting contact with the victim was in effect while he was incarcerated. The judge's order revoking his probation and imposing a further term of incarceration is reversed.

*So ordered.*