NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1141

COMMONWEALTH

vs.

IRVIN WILLIAMS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Irvin Williams, was sentenced in the Superior Court to a term of incarceration for probation violations.  He appeals on two grounds -- first, that the no-contact order he violated was ambiguous, and second, that the judge improperly credited the victim's affidavit and not her oral testimony.  We affirm.

Background.  In September 2021, the victim called the Boston Police Department to report a domestic violence incident involving the defendant, who was on probation at the time.  The victim told the responding officer that two weeks earlier the defendant, her ex-boyfriend, assaulted her.  She reported that the defendant pushed her onto the bed, choked her, and covered

her mouth. She told the officer that the defendant left the apartment because his car had been towed, but then came back, and -- when she refused to open the door -- kicked it open and entered the apartment.

The responding officer testified that he saw that the apartment's door frame was broken. He testified that the victim repeatedly mentioned having "low self-esteem" and described her as "kind of . . . fidgety" while speaking with him. He did not report any physical signs of injury.

After being advised by the officer of the process for doing so, the victim sought and was granted a restraining order under G. L. c. 209A. In her affidavit, she wrote that the defendant threatened to kill her while she was in the shower; told her that "he can tell [her] parents never hit [her]"; and pushed her on the bed and suffocated her "while grabbing [her] left upper arm[, giving her a] bruise." The victim also averred that she "kicked [the defendant] out[,] he then left[,] noticed his car got towed [and] knocked on [her] door," and, when she refused to open the door, "he kicked [her] door open. The landlord then text[ed her] and said the domestic violence needs to stop." She claimed that "[f]or the past year [the defendant] has mentally, verbally[,] and physically harmed [her]." The victim wrote that she was "trying to move on with [her] life" with college, work, and her recovery, and the defendant "won't leave [her] alone."

2

The defendant was subsequently charged with assault and battery on a family or household member, breaking and entering to commit a misdemeanor, and strangulation or suffocation. The probation department issued a probation violation notice.[1]

The victim testified at the initial probation surrender hearing and recanted the assault allegations. She testified that she lied about the incident to get the defendant in trouble and hurt him emotionally.

In releasing the defendant at the end of the hearing, the judge ordered that he wear a GPS monitor, stay away from the victim's property, and have no contact with the victim. Because it was late on a Friday afternoon and the defendant could not be fitted with a GPS monitor, the judge ordered the defendant to return to court on Monday to be fitted. The defendant was to wear the monitor "until this probation violation issue is resolved." After setting the date for the final probation surrender hearing, the judge told the defendant "[i]n the meantime, you're to have no contact, absolutely no contact, either directly or indirectly, with the [victim] in this case." On Monday, when he returned to get the GPS bracelet, the defendant signed the judge's written order of conditions of

---

[1] Allegations that the defendant failed to complete the mental health evaluation and missed an office visit are not before us as the defendant was found not to be in violation for these reasons.

3

pretrial release, which included the condition that he "have no contact, direct or indirect," with the victim.

The final probation surrender hearing took place over four days in front of a different judge. In addition to testimony from the responding officer (outlined above), the Commonwealth entered a copy of the victim's affidavit and the restraining order without objection from the defendant.

The victim again testified for the defendant, maintaining that she "made the report out of anger because [she] was upset, and [she] was just being spiteful" and it was not true. When asked why she had lied, the victim answered that she did not know and she "just did it out of anger" because the relationship had ended.

The victim's testimony also conflicted with her affidavit about having her landlord's phone number, the cause of the broken door, and the defendant's car.

After this testimony, the Commonwealth began investigating the victim for perjury. The investigating State police trooper testified as a rebuttal witness for the Commonwealth. Her testimony corroborated the victim's affidavit in at least two respects. Tow receipts admitted in evidence corroborated the victim's affidavit that the defendant's car was towed from a location near her house on the night of the assault.

In finding the defendant had violated the terms of his probation by committing the assault and battery, the judge credited the Commonwealth's evidence, including the responding officer's testimony, the victim's affidavit, the tow receipts, and the State trooper's testimony. The judge did not credit the victim's live testimony.

The State trooper's post-hearing investigation also revealed calls between the victim and the defendant during months after the hearing judge issued the no-contact order. The probation department amended the notice of probation violation to include violations for violating the no-contact order (and failing to report to probation). After another evidentiary hearing, the judge found that the defendant also violated his probation by having contact with the victim after the no-contact order was in place. The defendant moved for reconsideration.

Denying the motion, the judge found that (1) the victim's affidavit was made from personal knowledge; (2) it was made close in time because it was less than three weeks after the alleged incident; (3) it included specific details from the alleged incident and her personal life that the victim "would not have set forth . . . unless they were true"; (4) the details provided in the victim's police report and the affidavit were internally consistent; and (5) the police testimony was "entirely credible," and, with the tow receipts, corroborated

"key aspects" of the affidavit.  See Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016).  The judge then weighed the reliability of the victim's testimony, finding that "much of [it] was patently false" and it was "not internally consistent," and found the motivation behind her testimony was "consistent with a last ditch effort to rekindle her relationship with the defendant."

The judge subsequently denied a second motion to reconsider.

Discussion.  "The Commonwealth must prove a violation of probation by a preponderance of the evidence."  Commonwealth v. Bukin, 467 Mass. 516, 520 (2014).  We review an order revoking probation for abuse of discretion to determine "whether the record discloses sufficient reliable evidence to warrant the findings by the judge that [the defendant] had violated the specified conditions of his probation."  Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000).  Accord Commonwealth v. Jarrett, 491 Mass. 437, 440 (2023).

1.  Violation of the no-contact order.  Due process "requires that a person be given a reasonable opportunity to know what the [probation] order prohibited, so that he might act accordingly."  Commonwealth v. Ruiz, 453 Mass. 474, 478 (2009), quoting Commonwealth v. Delaney, 425 Mass. 587, 592 (1997), cert. denied, 522 U.S. 1058 (1998).  "[A] condition of probation

6

must provide 'reasonable guidance' as to the conduct prohibited so that people of 'common intelligence' will understand its meaning." Ruiz, supra at 479, quoting Commonwealth v. Kendrick, 446 Mass. 72, 75 (2006).

Probation conditions "need not provide the fullest warning imaginable." Kendrick, 446 Mass. at 75. "A judge's inquiry whether a defendant has received the required 'fair notice' is not 'confined to the four corners of the probation order'; rather, the order's meaning may be illuminated by the judge's statements and other events that are part of the notification process." Ruiz, 453 Mass. at 479-480, quoting United States v. Gallo, 20 F.3d 7, 12-13 (1st Cir. 1994).

The no-contact order provided fair notice to the defendant. First, at the initial probation surrender hearing the judge repeatedly told the defendant not to have any contact with the victim. Second, even if the context of these oral instructions created ambiguity, it was resolved by the written no-contact and stay away orders, which the defendant signed after the weekend and before the violative contact. The defendant specifically agreed that he would "have no contact, direct or indirect," with the victim. This signed agreement provided "fair warning of conduct that may result in revocation of probation." Kendrick, 446 Mass. at 75. We discern no abuse of discretion.

7

2.  Reliance on the affidavit.  At a probation violation hearing, a judge may rely on hearsay evidence that has "substantial indicia of reliability."  Commonwealth v. Ogarro, 95 Mass. App. Ct. 662, 668 (2019).  When a "judge relies on hearsay evidence in finding a violation of probation, the judge should set forth in writing or on the record why the judge found the hearsay evidence to be reliable."  Hartfield, 474 Mass. at 485.  In determining whether hearsay is substantially reliable, the judge may consider

> "(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity."

Commonwealth v. Costa, 490 Mass. 118, 124 (2022), quoting Hartfield, supra at 484.

"When hearsay evidence is reliable, . . . then it can be the basis of a revocation."  Commonwealth v. Durling, 407 Mass. 108, 118 (1990).  "We review a judge's determination that hearsay is substantially reliable, like other evidentiary decisions, under an abuse of discretion standard."  Commonwealth v. Rainey, 491 Mass. 632, 648 (2023).

8

The judge carefully applied the Hartfield factors and made detailed findings in favor of the affidavit's substantial reliability, assessing the affidavit in light of other evidence presented at the hearing. "There is no requirement that hearsay satisfy all the above criteria to be trustworthy and reliable." Commonwealth v. Patton, 458 Mass. 119, 133 (2010). See Costa, 490 Mass. at 125 n.4 (although inconsistency between declarant's statements goes to credibility, "it does not directly undermine the reliability of the complainant's allegations . . .").

The judge considered evidence and inferences from testimony that corroborated the victim's affidavit: the responding officer's "entirely credible" testimony about the initial complaint, his personal observations of the victim's demeanor, and the condition of the apartment door; the tow receipt from the day of the alleged incident; and the landlord's statements to the State trooper. This evidence was weighed against the victim's oral testimony. The judge outlined why he did not credit her, and drew inferences from the victim's ongoing communication with the defendant to find that she had "continued interest in the defendant," which provided "motive for her recantation."

"The defendant offered testimony that contradicted the probation officer's case, but 'the hearing judge . . . is responsible for determining the weight and credibility of the

9

evidence.'"  Commonwealth v. Foster, 77 Mass. App. Ct. 444, 451 (2010), quoting Brown, petitioner, 395 Mass. 1006, 1007 (1985). We see nothing in the case law suggesting that where -- in the context of a probation revocation hearing -- witnesses seek to recant earlier statements to police, a judge is precluded from relying on the earlier statements if they otherwise present substantial indicia of reliability.  See, e.g., Patton, 458 Mass. at 131, 134-136 (no error in judge finding probation violation based on hearsay statements alleged victim made to investigators, even in face of evidence that witness subsequently recanted).  There was "substantially reliable evidence for the judge to conclude, by a preponderance of the evidence, that the probationer 'more likely than not violated the conditions of his probation.'"  Jarrett, 491 Mass. at 445, quoting Commonwealth v. Kelsey, 464 Mass. 315, 324 (2013).  "It was a matter for the judge to decide how much weight to give the

evidence of recantation."  Patton, supra at 131.  There was no abuse of discretion.

Order revoking probation and
  imposing sentence affirmed.

Orders denying motions for
  reconsideration affirmed.

By the Court (Meade,
  Hershfang & Toone, JJ.[2]),

Paul Little

Clerk

Entered:  December 10, 2024.

---

[2] The panelists are listed in order of seniority.