COMMONWEALTH *vs.* MICHAEL A. DELANEY. No. 92-P-1723. March 9, 1994. *Practice, Criminal*, Probation. *Evidence*, Hearsay.

A jury of six in Dedham District Court on October 3, 1991, found the defendant Michael Delaney guilty of a violation of the Abuse Prevention Act, G. L. c. 209A, § 7, and of assault and battery, both offences committed upon the defendant's ex-wife Janet Delaney. The defendant received concurrent sentences of two years' confinement at a house of correction, suspended, with probation to April 3, 1993. On March 27, 1992, the defendant was "surrendered" by a Quincy probation officer for alleged violation of probation. A revocation hearing was held in Quincy District Court on April 7, 1992.[1]

The claimed violation[2] was that the defendant, sometime after 9:00 P.M., on a day in the latter part of December, 1991, was present for some moments in a car in the driveway of Janet Delaney's house, and was thereby in alleged breach of a condition of his probation, namely, that he have no contact, direct or indirect, with his ex-wife.[3]

Here is the episode from which the surrender arose. Danielle Delaney, an eleven year old, one of the four Delaney children, was to dance in a

[1]The original charges were brought in Quincy District Court, but the jury of six trial occurred in Dedham District Court and probation supervision occurred in Dedham. But it was a Quincy probation officer who surrendered the defendant and the revocation proceeding was commenced in Quincy. The question was raised whether it was not up to Dedham probation to move in Dedham, if at all, but the defendant does not press the point here, nor shall we.

[2]The notice of surrender served on the defendant misstated the date and nature of the claimed violation, but the prosecuting probation officer argued that the defendant knew what charge was intended and the proceeding went forward on that basis. The particular charge intended and tried was the defendant's appearance in the driveway, as stated in our text, which if proved was taken to have been a violation of the stated no-contact condition of the probation order (and presumably also a breach of a similar provision of the divorce judgment and so a violation of the condition of probation that the defendant obey orders of court; the divorce judgment was not introduced in evidence).

[3]The taped record of the probation hearing was impaired by gaps in the recording. The judge tried to help the situation by writing his account which, however, largely contains his reflections rather than details of the testimony. The parties finally agreed on an attempted reconstructed text of the testimony and colloquies.

Nutcracker play to be performed at a local school auditorium on two successive nights. To avoid an embarrassing meeting of the parents, it was arranged, evidently through the Department of Social Services, that Janet Delaney would attend on the first night and the defendant on the second. Janet Delaney attended as arranged. The following night the defendant attended with his mother, Geraldine Moran, his new wife, Loretta, and a small child of Loretta's former marriage. Danielle had been instructed by her mother to call home when the play ended; she would then be picked up at the auditorium. In fact Danielle did not call. At the curtain, about 9:00 P.M., seeing her father in the audience, Danielle came off the stage and spoke to him and the grandmother. According to the defendant, Danielle asked for a ride home, saying she did not feel well; her mother, she said, would not be home until 9:30 (hence, we gather, no chance of confrontation and no use telephoning).

At all events, Danielle was taken in the defendant's car, with Loretta driving, and brought home, a distance of a mile to a mile and a half from the auditorium.

We reach the question who was in the car as it reached the driveway.

Janet Delaney, called by the Commonwealth, said that, sitting in her dining room, having tea while awaiting Danielle's call, she saw a car, which she recognized as the defendant's, enter her driveway. She recognized Loretta and Ms. Moran in the car. She saw vaguely a third adult figure, but she did not make out who it was. Also in the car was an infant in a car seat. As the witness proposed to say what Danielle, on arrival, told her about the car's occupants, defendant's counsel objected on hearsay grounds. The testimony was indeed hearsay, and not admissible under any conventional exception to the hearsay exclusionary rule, but the judge admitted it because, he said, it was "reliable hearsay." The witness testified that Danielle told her the defendant was in the car in the driveway.

The defendant, testifying in his own behalf, said that, for fear of violating probation, he had Loretta drive the car and set him down some blocks before it reached Janet Delaney's house. He left the car and waited at the spot. After delivering Danielle, the car returned and picked him up. The next stop was at Ms. Moran's house.

Defendant's counsel asked the judge for an order that Danielle be brought to court to testify. The judge said, "Absolutely not."

Loretta and Ms. Moran testified to the conversation with Danielle after the play and also in accord with the defendant about his leaving the car before it reached the driveway: at the driveway the occupants of the car, besides Danielle, were Loretta, Ms. Moran, and the child.

The judge found that the defendant had violated the condition of probation. He revoked probation, lifted the suspension of sentence, and sentenced the defendant to the two-year term in a house of correction.

The defendant appealed. The judge denied a stay of sentence, but a single justice of our court allowed it pending appeal.

There is a difficulty with the admission of hearsay at the revocation proceedings.

Ordinarily our courts apply the rule that bars hearsay testimony unless it falls within a conventional exception to the rule, e.g. an exception for dying declarations. Our courts do not accept a so-called "innominate" exception to the rule like that recognized by the Federal courts (see Fed.R.Evid. 803 [24]) under which hearsay testimony having certain circumstantial guarantees of trustworthiness may be admitted by a judge if stated conditions are met. For our rejection of the innominate exception, see *Commonwealth* v. *Costello*, 411 Mass. 371, 377 (1991); Liacos, Massachusetts Evidence § 8.21 at 529-530 (6th ed. 1994).

However, in probation revocation cases, which are conceived to be sui generis, the Supreme Judicial Court has allowed the admission of hearsay "if the 'hearing officer specifically finds good cause for not allowing confrontation.' " *Commonwealth* v. *Durling*, 407 Mass. 108, 115 (1990), quoting from *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973). Normally, said the court, the best source of information is the testimony of persons having direct knowledge which can be tested by cross-examination of those persons. *Id.* at 116-117. But presenting such witnesses is not always possible and is often unrealistic. "The proper focus of inquiry in such situations is the reliability of the [hearsay] evidence presented." *Id.* at 117. In the *Durling* case, a number of police reports, i.e., hearsay, were held admissible where it would have been difficult to assemble and present in court the several police officers from various parts of the State who had prepared the reports and who, if called, would testify to their contents.

In the present case, neither condition of admissibility of the hearsay, as described by *Durling*, was met. The declarant, Danielle, was available to be called as a witness. And Danielle's statement to Janet Delaney, as reported by the latter, hardly bears indicia of trustworthiness comparable to the police reports in *Durling*.[4] The error in admitting the hearsay was material.[5]

The defendant's original offenses showed him to have been a violent man. When such a man commits further infractions, even minor ones, he gives notice of a possible falling back into earlier patterns of behavior. He may need to be brought up sharp. Yet when charged with a particular infraction, he is entitled to be tried with appropriate safeguards.

---

[4]This is quite apart from the question whether Janet Delaney's report of Danielle's words was accurate. This is not a question of hearsay but it must be noted that the defendant's ex-wife was no friend of his and her report could well have been distorted, perhaps unconsciously.

[5]The admission of the hearsay about the defendant's alleged presence in the car could not be justified by the fact that the defense introduced statements made by Danielle at the auditorium. These apparently were not offered to establish their truth, but even if considered objectionable hearsay, they were not objected to.

The order revoking the defendant's probation is reversed, and the case is remanded for any further proceedings that may be advised.

*So ordered.*

*John J. Ruby, Jr.*, for the defendant.

*Robert C. Cosgrove*, Assistant District Attorney, for the Commonwealth.