## COMMONWEALTH *vs.* JOHN R. KENDRICK.

Worcester. December 8, 2005. - February 9, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Probation, Revocation of probation. *Due Process of Law,* Probation revocation. *Evidence,* Hearsay. *Words,* "No contact."

A probation condition that a criminal defendant have "no contact" with minors under sixteen years of age gave the defendant sufficient notice that he was prohibited from displaying his antique automobile at a car show attended by minors — notwithstanding the fact that the defendant did not touch or speak with them — where, reading the condition with due regard to the circumstances in which it was imposed, a reasonable person would have understood that the prohibition imposed an obligation on the defendant to avoid encountering or engaging children in any way; to refrain from attendance at places where proximity to, and thus an encounter with, children was likely; and promptly to remove himself from such proximity when an encounter arose. [74-78]

A criminal defendant failed to demonstrate that the finding that he violated his probation conditions was impermissibly based on hearsay evidence rendered inadmissible by *Crawford* v. *Washington,* 541 U.S. 36 (2004). [78]

COMPLAINT received and sworn to in the Clinton Division of the District Court Department on March 22, 1999.

A proceeding for revocation of probation was heard by *Martha A. Scannell Brennan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James B. Krasnoo* for the defendant.

*Christopher P. Hodgens,* Assistant District Attorney, for the Commonwealth.

COWIN, J. We consider here whether a probation condition that the defendant have "no contact" with minors under sixteen years of age gave him sufficient notice that he was prohibited from displaying his antique automobile at a car show attended by minors. A District Court judge determined that the defendant

violated his probation by this conduct and committed him to a house of correction to serve the balance of a suspended sentence.[1] The defendant appealed and the Appeals Court affirmed the probation revocation. *Commonwealth* v. *Kendrick,* 63 Mass. App. Ct. 142 (2005). We granted the defendant's application for further appellate review, and now affirm.

*Background.* On January 21, 2000, the defendant pleaded guilty to two counts of indecent assault and battery on a child, G. L. c. 265, § 13B, in the Clinton Division of the District Court Department. He was sentenced on each count to two and one-half years in a house of correction, with seventeen months to serve, the balance suspended for five years, with probation until January 21, 2005. The sentence on the second count was to run concurrently with that on the first count.[2] The judge imposed a special condition of probation that the defendant have "[n]o contact [with] victim [and] [n]o contact [with] children under 16 yrs of age." It is this "no contact" condition that is at issue in this case.

On August 29, 2002, the defendant was notified that he had violated the "no contact" condition of his probation. The violation was based on his attendance at a local car show. At the probation revocation hearing, evidence was presented by a Bolton police officer who was present at the car show, the defendant's probation officer, and two of the defendant's acquaintances. A videotape of twenty minutes of the defendant's presence at the car show recorded by a second Bolton police officer was also introduced, and we have viewed it.[3] The evidence presented at the hearing can be summarized as follows.

[1]The defendant has served the balance of his sentence, and the appeal appears to be moot. However, a probation revocation may have collateral consequences. See *Commonwealth* v. *Lally,* 55 Mass. App. Ct. 601, 602 n.1 (2002); *Commonwealth* v. *Christian,* 46 Mass. App. Ct. 477, 479-480, *S.C.,* 429 Mass. 1022 (1999). The issue in the case has been fully briefed and may arise again but evade review. See *Delaney* v. *Commonwealth,* 415 Mass. 490, 492 (1993). Therefore, we address the issue.

[2]Both sentences were to run concurrently with a sentence the defendant received in the Superior Court approximately two weeks earlier when he pleaded guilty to an indictment charging indecent assault and battery on a child.

[3]The videotape was made at the request of the alert Bolton police officer who attended the show and recognized the defendant as a sex offender. See

On August 27, 2002, while the defendant was on probation, he attended a car show in Bolton. The car show was a weekly event held in the evening in the parking lot of a candy store and factory.[4] People of various ages attended, including children under sixteen years. The cars on display were congregated in one general area near a food concession stand. The defendant arrived at approximately 7:40 P.M. and stayed for about one hour. He displayed his antique automobile with the other cars in the show near the concession stand. He brought his dog with him and allowed it to roam through the crowd without a leash. Children in the crowd came within ten to fifteen feet of the defendant, perhaps even as close as five feet. The police officer who was present at the show did not observe the defendant speak to any children, but described children as "in very close proximity" to him, although not within "arm's reach." These observations are consistent with the videotape.

The defendant's probation officer testified that, based on court documents, that in the defendant's previous offenses it had been part of his "modus operandi to use his car and his dog to lure children over to him, to get talking and to bring them into contact with him." This was part of the defendant's method of establishing relationships with his victims before he sexually assaulted them.

The first witness for the defense related an encounter with the defendant while he was on probation. The witness and his minor grandchildren stopped to talk to the defendant, who was in his driveway approximately forty feet from the children. The defendant prevented the children from visiting, saying, "You know I'm not supposed to be around children." His second witness testified that he was at the car show displaying a car within view of the defendant, and that he did not observe the defendant touch or communicate with any children, and did not observe any children in the defendant's presence.

*The probation order.* The defendant challenges revocation of his probation on the ground that the "no contact" condition did

G. L. c. 6, §§ 178C-178P. She is the same officer who testified at the revocation hearing.

[4]The record does not indicate whether the candy store was open during the car show.

not reasonably communicate that his conduct at the car show was prohibited.[5] Due process requires that a probationer receive fair warning of conduct that may result in revocation of probation; thus, probation conditions must provide reasonable guidance with respect to what activities are prohibited. See *Commonwealth* v. *Power*, 420 Mass. 410, 421 (1995), cert. denied, 516 U.S. 1042 (1996); *Commonwealth* v. *Lally*, 55 Mass. App. Ct. 601, 603 (2002). Probation conditions, however, need not provide the fullest warning imaginable. See *United States* v. *Gallo*, 20 F.3d 7, 12 (1st Cir. 1994). The notice requirement can be satisfied by "an imprecise but comprehensible normative standard so that [people] of common intelligence will know its meaning." *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). Reading the condition with due regard to the circumstances in which it was imposed, see *United States* v. *Gallo*, *supra* at 11, a reasonable person should have understood that "[n]o contact with children under [sixteen years]" precluded the defendant's activities at a car show attended by such children.

The Appeals Court has read a probation condition of "no contact" as a strict bar against proximity or encounters of any type. In *Commonwealth* v. *Tate*, 34 Mass. App. Ct. 446 (1993), evidence of a defendant's standing on the victim's street and watching her walk away, even where her street was just a ten minute walk from where he lived, warranted a finding that he had violated a "no contact" condition. *Id.* at 449-450. The implication of *Commonwealth* v. *Delaney*, 36 Mass. App. Ct. 930, 930 n.2 (1994), is similar: that a defendant's mere presence in a car in the driveway of his former wife's house, if proved, would violate his probation condition to have "no contact" with his former wife.

Likewise, Massachusetts appellate courts have interpreted the term "no contact" in the related context of G. L. c. 209A protec-

---

[5]The defendant presents this basic argument in three ways: disputing the term "no contact" applied to his behavior; asserting that "no contact" is an ambiguous phrase requiring construction in a defendant's favor; and arguing that the phrase is unconstitutionally vague when applied in the circumstances of this case. Each formulation simply recasts the question whether the probation condition reasonably communicated that his conduct at the car show was barred, and our discussion takes into account all three versions of the defendant's contention.

tive orders to foreclose a myriad of potential encounters, engagements, or communications between people. A person subject to a G. L. c. 209A "no contact" order violates it by communicating by any means with a protected party or merely by being near that person. *Commonwealth* v. *Finase*, 435 Mass. 310, 314 (2001). See, e.g., *Commonwealth* v. *Basile*, 47 Mass. App. Ct. 918, 919 (1999) (order violated when defendant appeared "one block or more" from the protected area and waved and jumped up and down on seeing protected party); *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 906-907 (1996) (order violated by sending flowers anonymously). These obligations are imposed without regard to a person's intent to violate an order, see *Commonwealth* v. *Delaney*, 425 Mass. 587, 596-597 (1997), cert. denied, 522 U.S. 1058 (1998), to prevent any interaction and the antisocial conduct that it may generate.[6]

A "no contact" order also obligates a person to leave the area if a protected party appears. Happening on a protected person whom one did not, and could not reasonably, know to be present is not a violation, but the party subject to the order must end the encounter by leaving. See *Commonwealth* v. *Finase*, *supra* at 314-315; *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 493 (2002). Therefore, a defendant could have violated a "no contact" order by remaining near a protected party at a band concert on the town common. Although it was a public event, and although there was no evidence that the defendant was present because the protected party was there, he remained in proximity to the protected party after becoming aware of her presence. See, e.g., *Commonwealth* v. *Finase*, *supra* at 311, 315. By contrast, a defendant could be found not in violation of a "no contact" order if he entered a house where he did not know — and should not reasonably have known — a protected party was present, and then attempted to leave promptly, but was restrained from doing so. See, e.g., *Commonwealth* v. *Raymond*, *supra* at 489-490, 494.

The use of the words "no contact" in the defendant's probation condition, then, is reasonably understood to impose an

---

[6]The only intent required is that the defendant voluntarily intended the act that constituted the violation. See *Commonwealth* v. *Silva*, 431 Mass. 194, 200 (2000).

obligation on the defendant to avoid encountering or engaging children in any way; to refrain from attendance at places where proximity to, and thus an encounter with, children is likely; and promptly to remove himself from such proximity if an encounter arises unexpectedly. The condition is not, as the defendant suggests, simply a requirement not to touch or speak to a child. "No contact" obviously includes such conduct, but also requires the defendant to avoid even the opportunity for such touching or direct communication.

The requirement to have "no contact" with children under sixteen years of age was imposed when the defendant pleaded guilty to molesting children. In such circumstances, the order communicated to a reasonable person that the defendant's conduct at the car show was a probation violation. The car show was a community event held in the parking lot of a candy store and attended by minors. Whether the defendant knew beforehand that children would be present, he could not help but become aware of them on his arrival. He failed to remove himself from close proximity to those children. In fact, his actions could be interpreted as designed to encourage children to interact with him. He situated himself near a food concession stand, a location particularly likely to be visited by the protected class. He displayed his antique automobile, a clear invitation to all in attendance to approach. He also brought his dog with him and allowed it to wander through the crowd, an action that could well attract children. Any doubt that the conduct was forbidden by the probation condition is dispelled by its similarity to his conduct during his prior offenses where he used the car and the dog to establish relationships with his victims.[7,8]

The defendant argues that finding a violation where he was

[7]The question in this case is what a reasonable person would understand the probation condition to mean, but our conclusion on this point is buttressed by evidence that the defendant himself understood the condition to mean he must stay away from children. As recounted above, one defense witness, a friend, testified that the defendant once stopped the witness from approaching with his grandchildrend saying, "You know I'm not supposed to be around children." This statement indicates that the defendant was aware of the broad nature of the "no contact" condition and its proximity requirement.

[8]The probation revocation proceeding in this case took place over several days. At the end of the first day, the judge scheduled the hearing to resume approximately two weeks later. She also ordered that during the interval, "if

simply near minors, but did not touch or speak with them, would cause him to be in violation of his probation in a host of innocent situations. For example, he suggests that such a reading would render him in violation if a child simply walked past him at a post office or in a supermarket. Probation violations are considered on a case-by-case basis, and we do not address today what other circumstances would constitute prohibited behavior under a "no contact with minors" provision. We note, however, that a "no contact" condition is not the equivalent of house arrest; therefore, some fleeting encounters with children must be anticipated. If the conduct at issue involved inadvertent and unavoidable proximity to children and a defendant removed himself from the situation as quickly as reasonably possible, a logical reading of a "no contact" probation condition and analogy to G. L. c. 209A cases might well lead to a different result.

*Hearsay.* Relying exclusively on arguments advanced in a brief submitted in an unrelated case, the defendant maintains that the finding that he violated his probation conditions was impermissibly based on hearsay evidence rendered inadmissible by *Crawford* v. *Washington*, 541 U.S. 36 (2004). Most of the evidence at the defendant's probation revocation hearing was based on direct observation of the defendant's conduct. However, his probation officer testified that the use of the car and the dog were part of the defendant's behavior in his previous offenses. This testimony was apparently based on documents provided by the sentencing courts. At least this segment of the probation officer's testimony was hearsay. Assuming for the sake of argument that the judge relied on the hearsay testimony in reaching her decision to revoke probation, we have separately held that the *Crawford* case does not apply to probation violation hearings.[9] See *Commonwealth* v. *Wilcox, ante* 61 (2006).

---

[the defendant] goes someplace . . . and there are some children there, I'm going to order that he just leave that area immediately in the meantime, so there's no further ambiguity with the idea of contact." The defendant argues that the judge's statements and order were a recognition that the probation condition was ambiguous. We disagree. The judge's order merely clarified for the defendant what was expected of him under his "no contact" order; it does not bear on how a reasonable person should have understood the condition.

[9]Our decision in *Commonwealth* v. *Wilcox, ante* 61, 66-68 (2006), does not

*Conclusion.* For the foregoing reasons, there was no error in revoking the defendant's probation and the order revoking probation is affirmed.

*So ordered.*

---

alter the rule that the hearsay on which the judge relied must have been reliable hearsay. See *Commonwealth* v. *Negron,* 441 Mass. 685, 690-691 (2004). The District Court judge did not make explicit findings as to the reliability of the hearsay. The issue, however, is not before us, as the defendant has not made any appellate argument on the matter. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).