NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1270                                        Appeals Court

COMMONWEALTH  vs.  BRUCE MEDEIROS.

No. 17-P-1270.

Bristol.      October 12, 2018. - April 4, 2019.

Present:  Vuono, Meade, Milkey, Desmond, & Wendlandt, JJ.[1]


Practice, Criminal, Revocation of probation.  Due Process of Law, Probation revocation, Notice.  Notice.


Indictments found and returned in the Superior Court Department on March 4, 2002.

A proceeding for revocation of probation was heard by Renee P. Dupuis, J.


Tara B. Ganguly for the defendant.
Mary E. Lee, Assistant District Attorney, for the Commonwealth.


_____

[1] This case was initially heard by a panel comprised of Justices Milkey, Desmond, and Wendlandt.  After circulation of a majority and a dissenting opinion to the other justices of the Appeals Court, the panel was expanded to include Justices Vuono and Meade.  See Sciaba Constr. Corp. v. Boston, 35 Mass. App. Ct. 181, 181 n.2 (1993).

DESMOND, J.  In this case, we consider the meaning of a special probation condition to "have no involvement with minors without responsible adult supervision."  Because we conclude that the defendant had sufficient notice that trying to enter a grammar school through a locked rear door, without adult supervision and during classroom hours, violated this condition, we affirm the finding of a violation of the defendant's terms of probation and affirm the order revoking probation and imposing sentence.

Background.  In 2001, the defendant was arrested for displaying child pornography and exposing himself to two girls, aged nine and eleven, who were walking home from school.  For that offense, the defendant pleaded guilty in 2002 to two counts of dissemination of matter harmful to a minor, two counts of dissemination of child pornography, and three counts of possession of child pornography.  He received concurrent terms of four to five years in State prison on his convictions of dissemination of matter harmful to a minor and possession of child pornography.  He also received a five-year probationary term for his convictions of dissemination of child pornography, which was set to begin after his release from State prison.  One

of the special conditions of his probation was to have "no involvement with minors without responsible adult supervision."[2]

The 2002 convictions also violated an existing probation order in Florida, stemming from another incident where the defendant had exposed himself to children. Thus, once he completed his Massachusetts prison term in 2006, the defendant was extradited to Florida. The defendant returned to Massachusetts in December, 2012, and his five-year probationary term began at that time.

At roughly eight o'clock in the morning on December 5, 2013, off-duty New Bedford Police Sergeant Joshua Fernandes was walking near a Catholic grammar school in New Bedford when he made eye contact with the defendant, who was walking on the sidewalk of a cross street that ran along the front of the school. When Sergeant Fernandes peered over his shoulder, he saw the defendant do an "about face" and reverse his direction to move toward the school building. The building was surrounded by a ten-foot high chain link fence, with gaps at the stairwells that led to the school's exterior doors. Sergeant Fernandes observed the defendant enter the schoolyard and approach a

---

[2] The defendant's special conditions also included: to have no direct or indirect contact with the victims, to attend sexual perpetrator counseling, to surrender his computer hard drive upon request or allow the police to purge its contents, and to submit a deoxyribonucleic acid (DNA) blood sample upon request.

ground level door in the back of the school.  The door was secured by a keypad locking mechanism, equipped with an intercom and surveillance system, and was marked, "Please close the door firmly behind you."  The sergeant watched the defendant peer into the school through the glass portion of the door, grab the door handle, and "attempt[] to open it," but he was thwarted by the locking mechanism.

The defendant then followed a blacktopped area on school property toward another entrance in the back of the building. At that point, Sergeant Fernandes used his cell phone to call a marked unit for assistance, and subsequently lost sight of the defendant for approximately thirty seconds.  When the sergeant next saw the defendant, he was on the sidewalk adjacent to a third entrance to the school, heading toward a nearby bus stop.

Suspicious of the defendant's behavior, Sergeant Fernandes called for a marked police unit to the area and approached the defendant at the bus stop and identified himself as a police officer.  He twice asked the defendant why he had tried to gain access to the school, but the defendant did not give a direct answer.  Sergeant Fernandes next asked what he was doing in the area.  The defendant stated that he had taken a bus from his home to Melville Towers, a location in downtown New Bedford, and then had gone to a store north of the school to buy cigarettes. Sergeant Fernandes was familiar with the area, and knew there

was a store adjacent to Melville Towers that sold cigarettes. He therefore inquired why the defendant would walk away from Melville Towers to purchase cigarettes. He received no response. Once the marked unit arrived, the sergeant ran a check on the defendant and learned he was a registered level three sex offender.[3] Sergeant Fernandes notified the school of the incident and applied for a criminal complaint to issue for one count of trespass.

The defendant was served with a written notice of probation surrender alleging that he had violated the special condition of probation to "have no involvement with minors without responsible adult supervision." The notice also alleged that he had failed to obey a New Bedford ordinance prohibiting sex offenders from entering "child safety zones" (as defined in the ordinance) in violation of the condition of probation that he obey local, State, and Federal laws. An initial probation surrender hearing was scheduled for January 2, 2014, and the

---

[3] The Sex Offender Registry Board applies a level three classification when "the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination" of information identifying the defendant and his offenses. G. L. c. 6, § 178K (2) (c). Level three is the highest classification possible. Compare level one (low risk of reoffense); level two (moderate risk of reoffense). See G. L. c. 6, § 178K (2) (a), (b).

violation hearing was held across a series of dates in 2014 and 2015.[4]

The defendant testified on October 10, 2014, at the probation violation hearing. In that hearing, he admitted that he knew the building was a school, and claimed that he had approached the school to inquire about a food pantry that was sponsored by a nearby church. The judge did not credit the defendant's testimony,[5] and on October 16, 2014, found him to be in violation of the terms of his probation. On August 12, 2015, the judge revoked the defendant's probation and sentenced him to ten to fourteen years in State prison. This appeal followed.

------

[4] The evidentiary component of the violation hearing took place on three dates in the spring and fall of 2014, and the dispositional component took place on four dates from the fall of 2014 through the summer of 2015. The delays in the proceedings, while unexplained on the record, appear to be related at least in part to an inability to acquire the defendant's treatment center records. Proceedings were also continued multiple times at the request of the defendant or the Commonwealth or by agreement, and once because one of the attorneys was scheduled for another trial.

[5] At the hearing, the defendant argued that he lacked a "bad" intent in entering the school grounds. The defendant never told Sergeant Fernandes that he was looking for a food pantry, and testified that his statement to Sergeant Fernandes was inaccurate. The judge noted this inconsistency, as well as several others in the defendant's testimony. To the extent the defendant challenges the judge's findings, his arguments are without merit. See Commonwealth v. Janovich, 55 Mass. App. Ct. 42, 50 (2002) (assessing weight and credibility of evidence is exclusively province of hearing judge).

Discussion.  On appeal, the defendant argues that the judge abused her discretion in finding that his conduct violated the probation condition barring involvement with minors without responsible adult supervision.  Alternatively, he asserts that he lacked sufficient notice of the scope of that condition.  These are overlapping questions, so we address them together.[6]

"A determination whether a violation of probation has occurred lies within the discretion of the hearing judge.[7]  Commonwealth v. Durling, 407 Mass. 108, 111-112 (1990).  The Commonwealth must prove a violation of probation by a preponderance of the evidence.  Commonwealth v. Nunez, 446 Mass. 54, 59 (2006)."  Commonwealth v. Bukin, 467 Mass. 516, 519-520 (2014).  Interpreting a condition of probation is essentially a question of law.  United States v. Gallo, 20 F.3d 7, 11 (1st Cir. 1994).  "Due process requires that a probationer receive

---

[6] See Commonwealth v. Kendrick, 446 Mass. 72, 75 n.5 (2006) ("[D]isputing [that] the term . . . applied to his behavior . . . [and] arguing that the phrase is unconstitutionally vague when applied in the circumstances of this case . . . simply recasts the question whether the probation condition reasonably communicated that his conduct . . . was barred").

[7] "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

fair warning of conduct that may result in revocation of probation; thus, probation conditions must provide reasonable guidance with respect to what activities are prohibited." Commonwealth v. Kendrick, 446 Mass. 72, 75 (2006). Reasonable guidance, however, "is not to be confused with the fullest, or most pertinacious, warning imaginable . . . [and does not have] to describe every possible permutation, or . . . spell out every last, self-evident detail." Gallo, supra at 12. "This notice requirement can be satisfied by 'an imprecise but comprehensible normative standard so that [people] of common intelligence will know its meaning.'" Commonwealth v. Riz, 90 Mass. App. Ct. 10, 13 (2016), quoting Kendrick, supra.

Here, the framework outlined in Kendrick is particularly instructive. In Kendrick, the probationer had, in the past, used his antique automobile and his pet dog to prey on children. See 446 Mass. at 74. While he was on probation, with a condition that he have "no contact [with] children under [sixteen] [years] of age," id. at 73, the defendant participated in an antique car show that was held in the parking lot of a candy store and was attended by children; he displayed his automobile near a food concession stand, and brought his dog with him to roam the event. The Supreme Judicial Court found that the probation condition for no contact with minors gave sufficient notice that the probationer was barred from taking

part in the car show, even if he never engaged with a child in the process.  See id. at 77.  This reading relied in part on a number of cases that interpreted "no contact" language broadly, see id. at 75-76, but also indicated that a special condition must be read reasonably and "with due regard to the circumstances in which it was imposed."  Id. at 75.  The court was particularly troubled by the similarity in the circumstances of the car show and the defendant's past offenses.  See id. at 77.

Here, the defendant would constrain the plain meaning of "no involvement" to require only that the defendant refrain from physically engaging or interacting with a child.  A similar claim was rejected in Kendrick.  "The [probation] condition is not, as the defendant suggests, simply a requirement not to touch or speak to a child.  'No contact' obviously includes such conduct, but also requires the defendant to avoid even the opportunity for such touching or direct communication" (emphasis added).  Id. at 77.  The defendant here also purports to distinguish Kendrick because of the language of the no contact order there.  We disagree.  While Kendrick addressed a different special condition, that fact need not preclude a similar outcome.[8]  "Involvement" is a broad word.  The definition of

---

[8] "Probation violations are considered on a case-by-case basis."  Kendrick, 446 Mass. at 78.  For this reason, we also

"involve" includes to "affect, implicate." Webster's Third New International Dictionary 1191 (2002). "Implicate," in turn, means to "include"; "entail as a natural . . . concomitant[] or consequence." Id. at 1135. Plainly, the children's safety was implicated in the defendant's efforts to enter the building surreptitiously, whether or not they were aware of the defendant's presence. Moreover, the defendant was unsupervised at the time of the incident. By entering school grounds when classes were in session, a place he had no right to be, and trying to enter through the locked back door of the school, unannounced and unescorted, he involved himself with and affected the safety of the minors within. To that end, any emphasis on the fact that the door was locked is misplaced and overlooks why the door was locked to begin with (i.e., the safety of the children).[9]

---

decline the defendant's invitation to venture into a consideration of hypotheticals beyond the facts of this case.

   [9] Similarly, we disagree with the defendant's assertion at oral argument that his conduct was merely an "attempt," and that to violate the condition, he must have interacted with or entered the presence of a child. See Kendrick, 446 Mass. at 77 (probation condition required defendant to "avoid even the opportunity" for prohibited conduct). Cf. Commonwealth v. Marzilli, 457 Mass. 64, 67 (2010), overruled in part on other grounds by Commonwealth v. LaBrie, 473 Mass. 754, 763-764 (2016) (2010) ("the fortuity that the defendant failed in his attempt to complete a crime does not absolve him from responsibility for it"). In any event, because this argument was not raised in the defendant's brief, the claim is not before us. See Kendrick, 446 Mass. at 78 n.9; Mass. R. A. P. 16 (a) (4), as amended, 367

Kendrick also teaches that the language of special probation conditions should be interpreted from the perspective of a reasonable person who understands the defendant's background.  See Kendrick, 446 Mass. at 77.  It is relevant, then, just as it was in Kendrick, to consider the "similarity to his conduct during his prior offenses."  Id.  This defendant was serving a five-year probationary term for the dissemination of child pornography in 2001.  On that occasion, the defendant exposed himself and showed child pornography to two girls walking home from school.  Thus, his prior attacks also preyed on school children and required little in the way of advance planning.  On the occasion at issue here, the defendant's behavior was conspicuous enough to catch the suspicion of an off-duty police officer walking in the area.  Accompanied by no one, the defendant eschewed the option of entering through the school's front doors and made no effort to use the intercom at the rear door.  The defendant gave false responses to the questions of the officer, and his excuse that he was searching for a food pantry was post hoc, illogical, and discredited by the hearing judge.  The defendant did not have a cogent reason for being at the school, and he admitted during the revocation

---

Mass. 921 (1975).  See also Cariglia v. Bar Counsel, 442 Mass. 372, 379 (2004).

hearing to knowing his behavior ran afoul of his probation conditions.[10]  The defendant had ample notice his actions were improper.

"No involvement without adult supervision" appears to be an uncommon phrase for probation orders, and the condition surely could have been articulated in a different way.  However, we need not overthink its interpretation:  Keeping in mind the defendant's background -- that of a level three sex offender with a history of preying on children -- his efforts to surreptitiously enter a grammar school building during classroom hours can be understood as involving the children inside. "[C]onditions of probation can be written -- and must be read -- in a commonsense way."  Gallo, 20 F.3d at 12.  We see no abuse of discretion in the judge's determination that, in these circumstances, the defendant violated his condition of probation to have "no involvement with minors without responsible adult supervision."[11]  We therefore affirm the finding of a violation

---

[10] While the testimony surrounding the defendant's admission is vague, it is incontrovertible that the defendant admitted to understanding at the time that his actions were contrary to the scope of his probation conditions; he knew that he was on the grounds of a school, peering into a school building, and that the terms of his probation prohibited him from "being around children."

[11] For the first time on appeal, the defendant also challenges New Bedford's "child safety zones" ordinance as violative of the Home Rule Amendment, art. 89, § 6 of the Amendments to the Massachusetts Constitution.  Because the

of the terms of the defendant's probation and affirm the order
revoking probation and imposing sentence.

So ordered.

---

judge's finding of a probation violation was warranted on the
basis of the "no involvement" condition discussed supra, we need
not address this argument. See Commonwealth v. Guzman, 469
Mass. 492, 500 (2014), quoting Beeler v. Downey, 387 Mass. 609,
613 n.4 (1982) ("We generally decline 'to consider
constitutional issues for the first time on appeal in order to
avoid an unnecessary constitutional decision'"). See also
Commonwealth v. Bartlett, 374 Mass. 744, 749 (1978), quoting
Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347-348
(1936) (Brandeis, J., concurring) (even if properly presented on
the record, "[a] court will ordinarily 'not pass upon a
constitutional question . . . if there is also present some
other ground upon which the case may be disposed of").

WENDLANDT, J. (dissenting, with whom Milkey, J., joins)
The question of the scope of conduct prohibited by a probation condition, on the one hand, and the question of whether the condition provided fair notice of the conduct proscribed, often overlap.[1] See Commonwealth v. Kendrick, 446 Mass. 72, 75 & n.5 (2006). However, as this case illustrates, these questions are not always the same. We agree with the majority that the evidence here supports the inference that the defendant tried to be involved with children even though he understood that any such involvement, if unsupervised, would violate his probation condition. He had fair notice of the conduct proscribed by the probation condition and attempted nonetheless to violate it. But his attempt failed, thwarted by a locked door, which prevented him from having any encounter with a child. Indeed, so far as the record shows, he neither saw nor was seen by a minor. Thus, although there was ample proof of mens rea, the

_____

[1] Indeed, it appears that, in the typical case, the dispositive issue is whether the probation condition gave the defendant fair notice of the proscribed conduct. See, e.g., Kendrick, 446 Mass. 72, 75 & n.5 (2006). See also Commonwealth v. Power, 420 Mass. 410, 421 (1995) (probation condition that defendant not profit from her criminality was not vague); Commonwealth v. Adams, 389 Mass. 265, 270 (1983), quoting Commonwealth v. Jarrett, 359 Mass. 491, 496-497 (1971) ("if the language which is challenged conveys sufficiently definitive warning as to the proscribed conduct . . . it is constitutionally adequate"); Commonwealth v. Riz, 90 Mass. App. Ct. 10, 13-14 (2016) (condition that defendant not "minimize" his criminal activity failed to provide reasonable guidance as to what conduct was prohibited).

Commonwealth was unable to demonstrate the actus reus necessary to make out a violation. See United States v. Zhen Zhou Wu, 711 F.3d 1, 18 (1st Cir. 2013), quoting United States v. Whiteside, 285 F.3d 1345, 1353 (11th Cir. 2002) ("even where the evidence is sufficient to show the necessary mens rea, the government still must always 'meet its burden of proving the actus reus of the offense'").[2] Because what occurred here was an attempted probation violation, not an actual one, we dissent.[3]

Determining the scope of a condition of probation is essentially a matter of law and, therefore, gives rise to de novo review on appeal. See United States v. Gallo, 20 F.3d 7, 11 (1st Cir. 1994). As with legislative enactments, the task of construing the scope of a probation condition begins by reference to the plain and ordinary meaning of the words comprising the condition. See id. at 12. See also Commonwealth

---

[2] The same fundamental principles apply to State offenses. See Commonwealth v. Lopez, 433 Mass. 722, 725 (2001) ("A fundamental tenet of criminal law is that culpability requires a showing that the prohibited conduct (actus reus) was committed with the concomitant mental state (mens rea) prescribed for the offense").

[3] While the defendant did not use the terms "actus reus" and "attempt" in his brief, he certainly argued that his actions (which he describes as "touch[ing] the door handle of a school and walk[ing] away in a span of five seconds") did not cross the line into prohibited conduct. Accordingly, we do not agree with the majority's conclusion that the defendant did not raise this argument in his brief.

v. <u>Power</u>, 420 Mass. 410, 421 (1995) (applying standards for construction of statutes to probation condition). The words of the probation condition define its scope, measured "by an 'imprecise but comprehensible normative standard so that [people] of common intelligence will know [their] meaning.'" <u>Commonwealth</u> v. <u>Riz</u>, 90 Mass. App. Ct. 10, 13 (2016), quoting <u>Commonwealth</u> v. <u>Kendrick</u>, 446 Mass. at 75.

Here, the defendant's probation condition proscribed "involvement with minors without responsible adult supervision." Whatever may be the outer limits of the conduct encompassed by the phrase "involvement with minors," at a minimum its plain meaning requires some degree of engagement or interaction with a minor.[4]

The majority reasons that "involve" broadly means to "affect, implicate," and that because the "children's safety was implicated" and "affected" by the defendant's attempt to enter

_____

[4] The term "involve" is defined as "to enfold or envelope so as to encumber," "to draw in as a participant," "engage, employ," "to oblige to become associated," "embroil, entangle, implicate," "to occupy (oneself) absorbingly," "to commit (oneself) emotionally," "to enclose in a covering," "wrap," "to surround as if with a wrapping," "envelop, shroud," "to complicate or make intricate in thought or form," "to wind, coil, or wreathe about," "entwine," "to relate closely," "connect, link," "to have within or as part of itself," "contain, include," "to require as a necessary accompaniment," "entail, imply," "to have an effect on," "concern directly," "affect." Webster's Third New International Dictionary 1191 (2002).

the school, he violated the "no involvement with" minors condition. However, while the defendant's failed attempt may have tested the school's security, it had no effect on any of the children; indeed, so far as the record indicates, no one at the school was even aware of his presence. Significantly, the probation condition proscribes involvement "with" a minor. There was no evidence that the defendant saw a minor or that a minor saw him, perforce there was no interaction "with" a child (or even any implication "for," or effect "on," any child).[5] Thus, the defendant's conduct -- an attempt to be involved with children -- does not fall within the plain meaning of the condition despite its otherwise expansive breadth.[6]

Neither Commonwealth v. Marzilli, 457 Mass. 64, 67 (2010), overruled on other grounds by Commonwealth v. LaBrie, 473 Mass. 754, 764 (2016), nor Kendrick, 446 Mass. at 74, is to the contrary. Marzilli involved a statute that prohibits attempting

---

[5] Focusing on an alternative definition of the term "involve," the Commonwealth maintains that the defendant's conduct "involved" minors because his actions "connected" the students to him. Given that no student saw the defendant, the claimed connection is also unsupportable.

[6] Because we conclude that the failed attempt does not constitute "involvement with" minors, we do not address whether, in addition, there was any evidence that the defendant's conduct was "without responsible adult supervision" as further required by the condition. In addition, we note that the record is devoid of any evidence that any child at the school was unsupervised by a responsible adult.

to commit a crime, G. L. c. 274, § 6.  Pursuant to this statute, "attempt is a crime separate and distinct from the substantive offense to which it is connected, one that focuses on, and punishes, acts that threaten the accomplishment of the substantive offense, not the substantive offense itself." LaBrie, 473 Mass. at 764.  Here, there is no probation condition comparable to the attempt statute.

In Kendrick, the court considered a probation condition that the probationer have "no contact with" minors.  The evidence presented at the probation revocation hearing included testimony that, for an hour long period, the probationer positioned himself alongside his antique automobile in the parking lot of a candy store near a concession stand of a car show.  See id. at 74.  During that time, he was amid a crowd that included minors.  See id.  While there was no evidence that the probationer spoke to any child, children came "within ten to fifteen feet of the [probationer], perhaps even as close as five feet."  Id.  And, the probationer allowed his dog to roam the event -- a ploy he had previously used to lure children to him before sexually assaulting them.  The court held that the probationer violated the "no contact with minors" condition, relying on a series of cases in which a no contact condition had been violated.  Id. at 75-76.  In each of those cases (and in Kendrick), there was evidence from which it could be inferred

that there was some interaction between the defendant and the protected individual.  In each, at the least, the protected individual saw or was seen by the defendant.  See, e.g., Commonwealth v. Finase, 435 Mass. 310, 311 (2001) (no contact provision violated when defendant was seen by protected individual at town concert, first near bandstand and then approximately three or four feet away from her).[7]  In contrast, here, there was no evidence of even this minimal level of interaction between the defendant and any minors during the five seconds he spent at the school's door.

In holding that the defendant's attempt here violates the condition, the majority reasons that a level three sex offender who has been convicted of dissemination of pornography to minors walking home from school (as was the defendant in this case) should have known that he was barred from going to a school where minors were present.  Yet, any similarity between the defendant's present conduct and his past convictions goes only to the question whether the defendant reasonably understood that

---

[7] Accord Commonwealth v. Basile, 47 Mass. App. Ct. 918, 919 (1999) (no contact provision violated when defendant is seen by protected individual more than one block away from her, jumping up and down and waving at her); Commonwealth v. Delaney, 36 Mass. App. Ct. 930, 931 (1994) (implicitly recognizing that probationer violates no contact condition where protected individual sees defendant on her driveway); Commonwealth v. Tate, 34 Mass. App. Ct. 446, 449 (1993) (probationer violates no contact condition where protected individual sees him watching her from "the top of the street").

the condition prohibited him from interacting with minors --
that is, the similarity is pertinent to the question whether the
defendant had fair notice of the conduct prohibited.  See
Kendrick, 446 Mass. at 75; Gallo, 20 F.3d at 11.  It is of no
assistance in determining whether his failed attempt to enter
the school crossed the prohibited line.[8]

Whatever the wisdom of a condition that would have
prohibited the defendant from attempting to enter a school or
walking on school grounds in view of his past offenses,[9] the
condition imposed requires, at the least, some evidence that the
defendant interacted or engaged with a minor.  Here, there is no
such evidence.  Even under the flexible normative standard

---

[8] In finding a probation violation, the hearing judge relied in part on statements made by the defendant during the probation revocation hearing that he may have agreed with the judge that he was prohibited from being around children.  As the majority concedes, these statements are vague, at best.  Certainly, the defendant's position in opposing the revocation was that he did not violate the terms of his probation.  In any event, the defendant's statements go only to the issue of fair notice; they do not answer the separate question whether his conduct constituted a violation or merely an attempted violation.

[9] To be clear, we state no view on the separate question whether a condition prohibiting the defendant from entering school grounds could be added prospectively.  See Commonwealth v. Goodwin, 458 Mass. 11, 17 (2010) (recognizing that judge may modify general or ambiguous probation terms to add "specificity or clarity"); Buckley v. Quincy Div. of Dist. Court Dep't, 395 Mass. 815, 820 (1985) (recognizing that supervisory court has no authority to modify probation conditions if there "has been no material change in the probationer's circumstances").

applicable to conditions of probation, the condition that the defendant "must have no involvement with minors without responsible adult supervision" does not extend to conduct consisting of no direct or indirect interaction or engagement with (or even a visual sighting of or by) any child.[10]

---

[10] The Commonwealth asks that we affirm on two alternative grounds, which the majority does not reach. First, the Commonwealth asks that we affirm on the basis that the hearing judge revoked the defendant's probation because he violated the local "child safety zones" ordinance. In our view, that ground is barred by Doe v. Lynn, 472 Mass. 521, 523 n.5 (2015) (holding similar local ordinance prohibiting sex offenders from being within designated "child safety zones" was prohibited by Home Rule Amendment, art. 89, § 6 of the Amendments to the Massachusetts Constitution). Second, the Commonwealth asks that we affirm on the basis that revocation was warranted because the defendant committed criminal trespass. In the face of a contested factual dispute, however, the hearing judge declined to find that the defendant violated his probation on the criminal trespass ground. See Commonwealth v. Moon, 380 Mass. 751, 756 (1980).